UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BRADEN J. ADOLPH, | ) | No. 09 B 32836 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

## MEMORANDUM OPINION

The chapter 7 bankruptcy of debtor Braden J. Adolph is before the court on the motion of creditor Charles C. Happ to dismiss the case pursuant to 11 U.S.C. §§ 707(a) and (b) on the ground that the case was filed in bad faith. For the reasons that follow, the motion will be denied.

### 1. Jurisdiction

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (J), and (O). *See In re Rooney*, 436 B.R. 454, 455 (Bankr. N.D. Ohio 2010); *In re Camp*, 416 B.R. 304, 305 (Bankr. E.D. Tex. 2009); *In re Bruckman*, 413 B.R. 46, 51 (Bankr. E.D.N.Y. 2009).

### 2. Background

The following facts are not disputed. Charles Happ and Braden Adolph were shareholders in a business called Eclectic Products & Resources, Inc. Happ and Adolph quarreled over some promissory notes Adolph had given to Happ, and Happ brought an action against Adolph in Illinois state court, eventually obtaining a default judgment against him.

Adolph was able to obtain an order vacating the default judgment on the condition that he pay $2,100 to Happ's attorney, an amount the state court later increased to $4,200. Rather than make the payment, Adolph filed this chapter 7 case on September 3, 2009.

On October 5, 2010, Happ moved to dismiss the bankruptcy case pursuant to 11 U.S.C. § 707(b) on the ground that the case had been filed in bad faith. In his motion, Happ asserted that Adolph made misrepresentations in his schedules, concealed assets, made false statements at his Rule 2004 examination, made payments Happ termed "preferential," filed bankruptcy solely to elude a single creditor, and enjoyed and continues to enjoy a "lavish lifestyle." (Dkt. No. 125). Several weeks later, Happ sought and received leave to file a nine-page supplement to his motion. (Dkt. No. 144). In the supplement, Happ requested dismissal of the case on essentially the same bad faith grounds as the original motion but pursuant to 11 U.S.C. § 707(a). (Dkt. No. 137).

Three weeks after filing the supplement, Happ commenced an adversary proceeding against Adolph. Happ's nine-count complaint alleges claims under 11 U.S.C. § 523(a) objecting to the dischargeability of Adolph's debt and claims under 11 U.S.C. § 727(a) objecting to Adolph's discharge. (Dkt. No. 147; Adv. Pro. No. 10 A 2306, Dkt. No. 1). The section 727 claims (claims under sections 727(a)(2)(A), 727(a)(3), and 727(a)(5)) overlap with the grounds of Happ's motion to dismiss under section 707.

Adolph objects to the motion to dismiss. He argues that bad faith is a cognizable ground for dismissal only under section 707(b), not section 707(a), and that section 707(b) does not apply to this case. A "better remedy" for Happ, he says, "would be in an adversary complaint." (Dkt. No. 154 at 7).

### 3. Discussion

Adolph is right. Bad faith is not a ground for dismissal under section 707(a). And although bad faith is a ground for dismissal under section 707(b), Happ may not resort to section 707(b) under the circumstances of this case. Happ's motion will therefore be denied.

#### a. Section 707(a)

Happ cannot assert bad faith as a ground for dismissal under section 707(a). Bad faith is a ground for dismissal only under section 707(b).

Whether a chapter 7 case can be dismissed on bad faith grounds under section 707(a) is one of the older debates in bankruptcy law. *See* Robert J. Landry III, *Viability of Bad-Faith Dismissals Under § 707(a)*, Am. Bankr. Inst. J., March 2008, at 1. Courts are deeply divided on the question. Two courts of appeals have endorsed bad faith dismissals under section 707(a), *see In re Perlin*, 497 F.3d 364, 369-70 (3d Cir. 2007); *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000); *Industrial Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126-27 (6th Cir. 1991), and two have rejected the idea, *see In re Sherman*, 491 F.3d 948, 970 (9th Cir. 2007); *In re Padilla*, 222 F.3d 1184, 1191 (9th Cir. 2000); *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994). The Seventh Circuit has yet to consider the question. Trial court decisions on the subject are too numerous to cite.[1]

---

[1] District court and bankruptcy court decisions in this circuit reflect the broader division of opinion, with most finding bad faith a ground for dismissal. *See, e.g., In re Tallman*, 417 B.R. 568, 575 (N.D. Ind. 2009); *United States v. Pedigo*, 329 B.R. 47, 48-51 (S.D. Ind. 2005) (reversing bankruptcy court decision that bad faith is not cause for dismissal under section 707(a)); *In re Am. Telecom Corp.*, No. 04 C 8053, 2005 WL 5705113, at *3 (N.D. Ill. Sept. 7, 2005) (stating that "cause" in section 707(a) has "routinely been interpreted to include a lack of good faith"); *In re Collins*, 250 B.R. 645, 653 (Bankr. N.D. Ill. 2000) (stating that "[b]ad faith can constitute cause for dismissal under § 707(a)"); *In re Whitford*, 101 B.R. 559, 562 (Bankr. S.D. Ill. 1989) (stating that "[f]iling a bankruptcy petition in bad faith is also considered grounds

The better view – the view most consistent with the language of the statute and the structure of the Bankruptcy Code – is that section 707(a) does not permit a case to be dismissed because the debtor filed the case in "bad faith." This is so for three reasons.

First, the phrase "bad faith" does not appear anywhere in section 707(a). Section 707(a) permits a court to dismiss a chapter 7 case for "cause" and then gives three examples: (1) unreasonable delay by the debtor prejudicial to creditors; (2) nonpayment of any fees or charges; and (3) failure of the debtor in a voluntary case to file the information required under section 521(a)(1). 11 U.S.C. §§ 707(a)(1)-(3). "Bad faith" is never mentioned. And although the list of examples in section 707(a) is admittedly not exhaustive, the three that do appear are "technical and procedural grounds" for dismissal. *Padilla*, 222 F.3d at 1192. Section 707(a), then, is best read as limited to technical and procedural violations of the Code. *Id.*; *see also United States v. Taylor*, 620 F.3d 812, 814 (7th Cir. 2010) (noting that under the doctrine of *ejusdem generis* "a statutory list of examples . . . can be a clue to the statute's intended scope" since "[t]he examples are a substitute for or supplement to a definition"). A debtor's bad faith is neither a "technical" nor a "procedural" problem.

Second, the Code specifically addresses the misconduct of debtors elsewhere. Section 523(a) bars the discharge of debts incurred through various kinds of wrongdoing, *see* 11 U.S.C. § 523(a), section 727(a) bars a debtor's discharge altogether because of wrongdoing in connection with the case, *see* 11 U.S.C. § 727(a), and section 707(b) permits dismissal of a consumer case that is "an abuse of the provisions of this chapter," *see* 11 U.S.C. § 707(b)(1). Where a general

---

for dismissal under section 707(a)"); *but see, e.g, Kranig v. Quimby (In re Quimby)*, 313 B.R. 779, 783 n.2 (Bankr. N.D. Ill. 2004) (endorsing the view that "bad faith is not 'cause'" for dismissal under section 707(a)).

statute and a specific one address the same subject, the specific statute governs. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-85 (1992); *Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 963 (7th Cir. 2004). Misconduct addressed under these specific statutes cannot constitute bad faith under the more general section 707(a). *Sherman*, 491 F.3d at 970-71; *Padilla*, 222 F.3d at 1192; *Huckfeldt*, 39 F.3d at 832.[2]

Third, and most important, Congress amended section 707(b) extensively in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), and the amendment expressly makes "bad faith" part of the analysis of "abuse." Section 707(b)(3) now provides that in considering "whether the granting of relief would be an abuse of the provisions of this chapter" when a presumption of abuse either does not arise or is rebutted, the court "shall consider — (A) whether the debtor filed the petition in bad faith." 11 U.S.C. § 707(b)(3)(A).

If there were any doubt that section 707(b) is a "specific" provision that governs over the more general section 707(a) when it comes to dismissals for bad faith, BAPCPA's enactment lays that doubt to rest. *See* 6 *Collier on Bankruptcy* ¶ 707.03[2] at 707-20 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) (stating that the issue "was resolved by Congress in the 2005 amendments to the Bankruptcy Code"); Landry, *supra*, at 48. Had Congress wanted courts to address bad faith under section 707(a), it would have included the phrase in that section. Because the phrase appears in section 707(b) but not in section 707(a), the most reasonable

---

[2] The misconduct of which Happ accuses Adolph in the motion to dismiss is cognizable under section 727(a), *see* 11 U.S.C. §§ 727(a)(2), (3), (4), (5), and section 707(b), 11 U.S.C. § 707(b), and Happ has in fact filed an adversary proceeding raising many of these claims. As Adolph rightly observes, an adversary proceeding is Happ's "better remedy" – not only because his claims clearly fall under section 727(a), but because a dismissal of Adolph's bankruptcy case would simply permit him to file another one. A denial of Adolph's discharge, on the other hand, would be permanent.

-5-

interpretation is that bad faith is not a basis for dismissal under section 707(a).

Despite BAPCPA, however, courts continue to hold that bad faith can be addressed under section 707(a). *See* Landry, *supra*, at 1 (noting that after BAPCPA "the continued viability of bad-faith dismissals under § 707(a) seemed over," but that the issue has nevertheless "risen its head in both consumer and nonconsumer cases in the post-BAPCPA era"). Many simply cite older decisions as support, but a few specifically reject the conclusion that the amendment of section 707(b) affects the proper reading of section 707(a) post-BAPCPA. *See, e.g., Perlin*, 497 F.3d at 370-71; *In re Boca Vill. Ass'n, Inc.*, 422 B.R. 318, 322 n.1 (Bankr. S.D. Fla. 2009) (rejecting the "negative implication argument" as "unpersuasive"); *In re Privada, Inc.*, No. 07-10940 FRM, 2008 WL 4692372, at *6 (Bankr. W.D. Tex. Oct. 22, 2008).

Possibly the most extensive discussion of the question post-BAPCPA appears in *Perlin*. There, the Third Circuit concluded that the explicit mention of "bad faith" in section 707(b) does not bar consideration of a debtor's income and expenses in deciding a motion to dismiss under section 707(a). *Perlin*, 497 F.3d 369-70. The court treated the obvious differences in sections 707(a) and (b) under a single principle of statutory interpretation, "the enumeration of one case excludes another," and noted that this principle applies "only when the expressed and unmentioned items are part of a 'commonly associated group or series.'" *Id.* at 370 (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)). The court then held that because section 707(a) is concerned with all cases and section 707(b) only with consumer ones, Congress did not treat consumer and nonconsumer cases as a "commonly associated group or series." *Id.* at 371 (internal quotation omitted). Finally, the court noted that BAPCPA's legislative history nowhere evinces an intent to "restrict a bankruptcy court's discretion in deciding motions to dismiss under

section 707(a)." *Id.*

This analysis has several flaws. First, it dispenses with an inapplicable doctrine of statutory interpretation, *expressio unius est exclusio alterius*, but ignores an applicable one – a specific statute governs over a general statute, *Morales*, 504 U.S. at 384-85 – that leads to the very interpretation *Perlin* rejects. *See* Landry, *supra*, at 48. Second, in considering whether BAPCPA's legislative history evinces an intent to "restrict" the discretion of bankruptcy courts under section 707(a), *Perlin* assumes that before BAPCPA a debtor's bad faith could in fact be addressed under that section. Given the *Perlin* court's own pre-BAPCPA decision on the subject, *see Tamecki*, 229 F.3d at 207, the assumption may be understandable. In making it, though, *Perlin* simply begs the question of the statute's correct interpretation. Third, because *Perlin* assumes the answer to the statutory interpretation question posed, the decision fails to consider the most reasonable explanation for BAPCPA's amendment of section 707(b): that Congress resolved the conflict in the case law on section 707(a) by making bad faith a ground for dismissal only under section 707(b).

Because the most reasonable interpretation of section 707, especially after BAPCPA, is that a case can be dismissed for "bad faith" under section 707(b) but not section 707(a), Adolph's case cannot be dismissed under section 707(a) as a bad faith filing. Happ's request for dismissal pursuant to that section must be denied. His dismissal remedy, if any, lies under section 707(b).

### b. Section 707(b)

In this case, however, dismissal is equally unavailable under section 707(b) for two reasons: Happ's motion is untimely, and Adolph's debts are not primarily consumer debts.

Happ's motion is untimely because he filed it more than thirteen months into the case.

Under Bankruptcy Rule 1017(e)(1), a motion to dismiss a case under section 707(b) "may be filed only within 60 days after the first date set for the meeting of creditors under § 341(a) . . . ." Fed. R. Bankr. P. 1017(e)(1). The first date for the meeting of creditors here was October 5, 2009. (Dkt. No. 5). Because Happ never moved to extend the deadline, as Rule 1017(e)(1) permits, the deadline for him to file a motion to dismiss under section 707(b) was 60 days after October 5, or December 4, 2009. Happ did not file his motion until October 5, 2010, a full year after the first date set for the creditors meeting and ten months late. Because Happ's motion is untimely, it must be denied. *See Rice, Heitman & Davis, S.C. v. Sasse (In re Sasse)*, 438 B.R. 631, 638-39 (Bankr. W.D. Wis. 2010) (denying section 707(b) motion to dismiss filed "almost six months after the deadline had passed").[3/]

Even if Happ's motion had been timely, it would have to be denied because the debts in this case are not primarily consumer debts. Section 707(b)(1) permits dismissal for "abuse" only of "a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . ." 11 U.S.C. § 707(b)(1); *see also In re Lybrook*, 951 F.2d 136, 138 (7th Cir. 1991). A "consumer debt" is one "incurred by an individual primarily for a personal, family, or household purpose," 11 U.S.C. § 101(8), in contrast to a "'debt incurred for a business venture or with a profit motive,'" *In re Sekendur*, 334 B.R. 609, 618 (Bankr. N.D. Ill. 2005) (quoting *In re Runski*,

---

[3/] The deadline, incidentally, suggests that the drafters of the Bankruptcy Rules also interpreted section 707(a) not to encompass dismissals based on bad faith. Under the Rules, there is a time limit to seek dismissal under section 707(b) but no time limit to seek dismissal under section 707(a). *See In re Rudler*, 576 F.3d 37, 44 n.10 (1st Cir. 2009) (noting that Rule 1017(e) and other provisions "ensure that motions under section 707(b) are made early in the bankruptcy case"). Placing a time limit on motions under section 707(b) but not section 707(a) would make no sense if both sections addressed the same conduct. Dilatory movants wanting to raise bad faith could avoid the deadline in Rule 1017(e) simply by moving under section 707(a), thereby putting the debtor's bad faith in issue as late in the case as they liked.

102 F.3d 744, 747 (4th Cir. 1996)). Debts are "primarily" consumer debts if "a majority" are consumer debts. *Id.*

Adolph's debts are not "primarily consumer debts" because he has no consumer debts. All of his debts are business debts. Adolph lists no secured claims on Schedule D and no priority unsecured claims on Schedule E. The only claims in the case are general unsecured claims on Schedule F, and there are only three: (1) Happ's $200,000 claim based on the promissory notes, (2) the claim of Happ's counsel for $4,200, and (3) a $37,586 claim belonging to SMG-II, LLC for "unpaid parts." The first two are plainly business debts, and the third presumably is as well. Happ does not deny any of this but notes only that Adolph checked the incorrect box on his petition indicating that his debts were primarily consumer debts.

Because Happ's motion under section 707(b) is untimely, and because Adolph's lack of consumer debt means section 707(b) does not apply here in any event, Adolph's case cannot be dismissed for bad faith under section 707(b). Happ's request for dismissal under section 707(b) must also be denied.

### 4. Conclusion

The motion of Charles C. Happ to dismiss the bankruptcy case of debtor Braden J. Adolph pursuant to 11 U.S.C. §§ 707(a) and (b) is denied. A separate order will be entered consistent with this opinion.

Dated: January 28, 2011

_____
A. Benjamin Goldgar
United States Bankruptcy Judge